Katherine CUNNINGHAM

v.

The UNITED STATES.

No. 433–60.

United States Court of Claims.

Feb. 14, 1969.

Robert H. Reiter, Washington, D. C., attorney of record, for plaintiff. Spaulding, Reiter & Rose, Washington, D. C., of counsel.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM*:

Plaintiff was employed as a mathematician at the Wright Air Development Center (WADC), Wright-Patterson Air Force Base, Ohio, from July 1956 until June 12, 1959, the effective date of her resignation. Shortly after submitting her resignation, and before its effective date, she requested that she be allowed to withdraw it. Air Force regulations provided that a resignation could be withdrawn only by the mutual consent of the employee and the Air Force, unless it was due to coercion or undue influence. AF Manual 40–1, ch. E–2. The Air Force did not consent to withdrawal of the resignation. Plaintiff then requested a grievance hearing, alleging that her resignation had been the result of duress. She requested an opportunity to show that duress existed, and asked to be reinstated. The grievance committee met in her absence, and determined that she had not resigned under duress.

On November 10, 1960, plaintiff brought suit pro se in this court, seeking to recover salary and accumulated annual

---

* This opinion is based on the opinion prepared by Trial Commissioner C. Murray Bernhardt, with deletions and modifications.

leave from the date of her resignation. She alleged in paragraph 1 that she "has been deprived of her employment * * in the Air Research and Development Command, United States Department of the Air Force, for reasons other than for the good of the service, by arbitrary and capricious acts committed in bad faith by the defendant * * * and by defendant's violations of the Veterans Preference Act of June 27, 1944, as amended (5 U.S.C. Sect. 863); the Air Force Civilian Personnel Manual, AFM 40–1, Section E2.2; applicable Civil Service rules and regulations; and the due process clause of the Fifth Amendment to the Constitution of the United States."

Defendant answered the (amended) petition on July 7, 1961, and on October 5, 1961, filed a motion for judgment on the pleadings, based on plaintiff's alleged failure to exhaust administrative remedies. Plaintiff answered defendant's motion, and the issue was briefed and argued. On March 6, 1963, defendant's motion for judgment on the pleadings was overruled by the court in an opinion reported at 161 Ct.Cl. 82. (Plaintiff had in the interim filed several motions for call and for orders to produce, which were denied without prejudice pending the decision on defendant's dispositive motion.)

On September 24, 1963, plaintiff moved for an order directing Wright-Patterson Air Force Base to produce for inspection and copying "any and all records or communications forwarded to Wright-Patterson Air Force Base, relative to the plaintiff, by the Veterans Administration". This motion was denied "without prejudice to plaintiff's right to file a motion showing how the documents sought are relevant to plaintiff's claim or to a defense". On October 9, 1963, plaintiff moved for an order directing the Chesapeake and Potomac Telephone Company to produce records that might show that plaintiff's telephone had been monitored. This motion was denied because it was not directed to a party to the suit.

No further action was taken by either party until February 26, 1965, when the commissioner requested that plaintiff explain the delay. He suggested that a possible procedure would be to file a motion for summary judgment, and warned that unless some action was taken soon, the claim could be dismissed for lack of prosecution. Plaintiff assured the commissioner that she intended to prosecute the case to a final conclusion. On March 24, 1965, she again moved for an order directing Wright-Patterson Air Force Base to produce any records and communications concerning her that had been received from the Veterans Administration. Plaintiff's motion was granted on April 1, 1965, but this order was suspended on April 14, 1965, pending the outcome of a pretrial conference to be held the next month.

The commissioner's memorandum of the pretrial, filed May 26, 1965, is as follows:

Various phases of this claim and possible procedures which might be utilized in moving the case to ultimate disposition by the court were freely discussed.

It was agreed that, among others, the following issues are involved:

1. Was plaintiff entitled to a hearing with respect to her request to be permitted to withdraw her resignation from federal service within a few hours after it was signed?

2. Was plaintiff coerced, or by duress forced, to sign a resignation?

3. Was it erroneous administrative procedure to deny plaintiff's request for a hearing concerning her request to withdraw the resignation?

Counsel for defendant agreed to furnish the commissioner all records from the Veterans Administration under certification with an accompanying statement to the effect that the documents furnished constitute the entire Veterans Administration record in the case in suit.

[End of page one of memorandum]

It was also agreed that other records, including medical records and diagnoses, previously denied plaintiff would be furnished to the commissioner *in camera*. Such records will be reviewed by the commissioner and a determination made by him concerning the right of plaintiff to see such records.

It was agreed that a motion for summary judgment will be filed by one of the parties within a reasonable time from this date. It is expected that the dispositive motion will be predicated upon alleged error in administrative procedure. Prior to the filing of such motion, it was agreed that plaintiff would move to amend the petition so that it will include the claim of error in the administrative procedure followed by defendant. Counsel for defendant is expected to respond to the proposed amendment of the petition. After such amendment has been effectuated the time will then be appropriate for the filing of a dispositive motion.

It should be borne in mind, however, as discussed during the pretrial conference, that the filing of a dispositive motion on the basis of error in administrative procedure as it was applied to plaintiff's separation from federal service will preclude the necessity of a formal trial, the taking of testimony and the offering of exhibits into the record. By pursuing this summary course of action the claim should be disposed of in a much shorter period than would otherwise be required should a formal trial be held.

In view of the determinations arrived at at the pretrial conference with respect to the filing of a dispositive motion in this case, any further action with reference to plaintiff's motion for discovery is deemed unnecessary.

Upon receiving the commissioner's memorandum, the defendant protested that its counsel's recollection was that it had agreed to furnish the commissioner, *in camera,* with the medical diagnoses of plaintiff, under certification, with an accompanying statement that they comprised all available Veterans Administration diagnoses. Defendant's counsel did not remember having promised to furnish "all records" from the Veterans Administration, and requested that the last paragraph on page one of the memorandum be deleted. Over plaintiff's protest, this paragraph was deleted on August 2, 1965.

On August 2, 1965, the commissioner also sent the following memorandum to plaintiff:

> The Pretrial Conference Memorandum * * * contains the following statement:
>
> > It was agreed that a motion for summary judgment will be filed by one of the parties within a reasonable time from this date. It is expected that the dispositive motion will be predicated upon alleged error in administrative procedure. *Prior to the filing of such motion, it was agreed that plaintiff would move to amend the petition so that it will include the claim of error in the administrative procedure followed by defendant.* Counsel for defendant is expected to respond to the proposed amendment of the petition. After such amendment has been effectuated the time will then be appropriate for the filing of a dispositive motion. * * *. [Emphasis in memo. of August 2, 1965.]
>
> More than 60 days have elapsed since that agreement was entered in the record. A progress report is desired concerning this matter.

Plaintiff's response was to move to suspend proceedings for 90 days, to enable her to seek a writ of mandamus in the District Court. The motion was granted, but apparently her attempt to obtain the writ was unsuccessful.

On November 15, 1965 plaintiff filed in this court a motion for an order directing the Department of the Army and/or the Veterans Administration to

produce "the total Record made by the Department of the Army" relative to her, and to designate that portion of her record which had been forwarded to WADC relative to her employment there during the period from 1955 to 1959. Simultaneously, plaintiff filed a motion for an order directing WADC to produce the information reviewed by the grievance committee.

On November 18, 1965, defendant moved to dismiss the petition for failure to prosecute, and requested that decisions on plaintiff's motions of November 15 be deferred until defendant's dispositive motion was decided. On the same day, plaintiff moved for leave to make a second amendment to her petition.

On November 19, 1965, plaintiff's motions to produce were allowed. Defendant requested review. On November 23, the commissioner allowed plaintiff's second amendment to her petition. Defendant requested court review, under Rule 55(a) (3), on the ground that the petition sounded in tort.

On June 6, 1966, the court issued the following order:

This case comes before the court on defendant's motion to dismiss the petition for failure to prosecute, filed November 18, 1965, defendant's motion to dismiss the second amendment to petition, filed December 15, 1965, and defendant's request for review pursuant to Rule 55(a) (3), filed November 24, 1965. Upon consideration thereof, together with the opposition thereto, and without oral argument,

IT IS ORDERED as follows:

(a) Defendant's motion to dismiss the second amendment to the petition be and the same is granted and the second amendment to the petition is dismissed on the ground that the new causes of action asserted therein sound in tort and, on the basis of 28 U.S.C. § 1491 and DeNigris v. United States, 169 Ct.Cl. 619, 622 (1965), are outside the jurisdiction of this court.

(b) Defendant's request to review the trial commissioner's order to produce "the information reviewed by the grievance committee" be and the same is denied.

(c) Defendant's request to review the trial commissioner's order to produce "the total record made by the Department of the Army relative to the Plaintiff" and for designation of a portion of such record, be and the same is granted, the trial commissioner's said order is reversed and plaintiff's motion is denied.

(d) Defendant's motion to dismiss the petition for failure to prosecute be and the same is denied, subject to renewal if plaintiff does not, within a reasonable time after compliance by defendant with the order to produce as described in paragraph (b), *supra,* take either or both of the following steps (1) amend her petition so as to allege a procedural error in the grievance proceedings and file a dispositive motion based on alleged error, and/or (2) proceed to trial on the claim in her petition that her resignation was induced by coercion, duress, or undue influence.

On June 28, 1966, defendant furnished plaintiff with copies of the information reviewed by the grievance committee, which consisted of a total of 40 pages, numbered C-23 through C-62. Plaintiff was advised that there were no pages C-22 and C-38, and that pages C-1 through C-21 of the grievance file consisted of correspondence dated after the date that the grievance committee had met. The material provided corresponded to the grievance committee's description of the material it reviewed, as set forth in its decision. Plaintiff complained to defendant's counsel about the absence of page C-38. The Justice Department sought an explanation from the Department of the Air Force. The Air Force's Civilian Personnel Office sent a memorandum to the Justice Department stating that none of the copies of the grievance record contained a

page C-22 or a page C-38, and that in its opinion the absence of these pages was the result of misnumbering. A copy of this memorandum was furnished to plaintiff.

No further steps in the litigation were taken until December 6, 1966, when defendant renewed its motion to dismiss for failure to prosecute. In its motion, defendant alleged that it had complied with the Order of the Court of June 6, 1966 to produce the information reviewed by the grievance committee, and that under par. (d) of the Order plaintiff therefore had the duty either to amend her petition or to proceed to trial on the claim that her resignation had been coerced. Plaintiff replied by alleging that defendant had not complied with the order to produce. Specifically, she contended that the missing pages contained her Veterans Administration records.

Shortly thereafter, plaintiff informed the court that she believed that her telephone had been monitored, and that a potential witness (General Wray, the commanding officer of WADC at the time of plaintiff's employment there) had been barred from any contact with her.

On February 3, 1967, the court denied defendant's motion to dismiss for lack of prosecution, and ordered the case returned to the commissioner for trial on the following issues:

(1) whether defendant had fully responded to the commissioner's Order to produce of November 19, 1965; and the court's Order to produce of June 6, 1966;

(2) whether plaintiff's 'phone had been subjected to wire tap, monitoring or control; and

(3) whether defendant had engaged in any activity which would prevent General Wray from being a competent, available, and impartial witness.

A trial of the above issues was held on March 13 and 14, 1967, in Washington, D. C., plaintiff appearing *pro se*.[1] In the light of all the evidence, it must be concluded that defendant has fully responded to the orders to produce; that plaintiff's 'phone has not been monitored by defendant; and that defendant has engaged in no activity which would prevent General Wray from being a competent, available, and impartial witness.

■ The material that defendant provided in response to the Order to Produce did correspond to the grievance committee's description of the material it reviewed, as set forth in its written decision. Moreover, plaintiff did not, at trial, in any way attempt to establish the existence or contents of the allegedly missing page C-38. Her trial effort was directed at the lack of certification of the documents that were produced. (They did not bear ribbon, seal, or signature.) However, defendant had sent plaintiff a fully certified statement from the Department of the Air Force which stated that it was believed that "the absence of pages C-22 and C-38 in Grievance File No. 1 was a result of misnumbering. None of the copies of the record contain pages C-22 and C-38." The question of certification was not raised before trial, and after the issue was raised, defendant offered to obtain it. There has been adequate certification.

■ Plaintiff offered only circumstantial evidence that her 'phone had been monitored. It is clear that a telephone repairman went to her apartment on August 15, 1966 to stop her 'phone from buzzing at the building's switch board. It is also clear that her 'phone was repaired on the 18th. The receptionist testified that one Galliot was the

serviceman who came on the 15th, and that someone she could not remember came "a few days" later. Telephone Company records showed that one Struder came on the 15th and Galliot came on the 18th. A friend of plaintiff testified that he removed the cover of plaintiff's 'phone several times during this period, and that on the 17th a blue lead line was taped off, but on the 18th (after the 'phone had been repaired) the line was connected to its terminal. It is unclear from the testimony whether the line had been attached to its terminal on the 16th. The above incidents and the occurrences related in finding 7 are inadequate to prove that plaintiff's 'phone had been monitored, and certainly inadequate proof that any monitoring was done by defendant.

■ A friend of plaintiff's had several conversations with General Wray concerning plaintiff's desire to discuss the circumstances of her resignation. General Wray contacted the Air Force Judge Advocate General, who informed him that he could not have such a discussion with plaintiff unless a representative of the Department of Justice was present, but that if such a representative was present, he was free to talk to anyone. Nothing was said to him about being a witness. General Wray testified that he knew of no activity on either side that could possibly prevent him from being a competent, available witness. It should be made clear to General Wray that, if he wishes, he can talk to plaintiff or her counsel as a possible or potential witness, in the absence of a representative of the Department of Justice, without violating the so-called "Hebert Law," 18 U.S.C. §§ 203, 205, 206, 283 (1964).

Since it is found that defendant has complied with the duty to produce set forth in paragraph (b) of the court's Order of June 6, 1966, it is now incumbent upon plaintiff, under paragraph (d) of the same Order, (1) to proceed to trial on her claim that her resignation was induced by coercion, duress, or undue influence, or (2) to allege a procedural error in the grievance proceedings, and file a dispositive motion based on such alleged error. In light of the fact that this case has been pending here for seven and a half years, plaintiff may now have no more than 45 days in which to move for trial or to file such a dispositive motion. There should be no further delay.